Argued and submitted July 30, affirmed September 22, 1980

STATE OF OREGON,
*Appellant,*

*v.*

CHARLES OTIS McMILLIAN,
*Respondent.*

STATE OF OREGON,
*Appellant,*

*v.*

CHARLES OTIS McMILLIAN,
*Respondent.*
(Cases Consolidated)

(No. C79-09-33331, CA 16537)
(No. C79-11-33890, CA 16538)

616 P2d 1201

W. Benny Won, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were James M. Brown, Attorney General, Salem, and Walter L. Barrie, Solicitor General, Salem.

Doreen L. Nepom, Milwaukie, argued the cause for respondent. With her on the brief was Nepom, Rose & Stern, Milwaukie.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

This is a state's appeal from an order of the trial court granting defendant's motion to suppress certain evidence and dismissing the indictments against the defendant. The sole issue we are asked to decide is whether, in the circumstances of this case, an in-court identification of the accused by the victim of the crime should be suppressed as the fruit of an unlawful arrest or search. Inasmuch as the trial court did not reach that issue, we affirm.

The defendant was charged with robbery in the first degree, in violation of ORS 164.415, and unauthorized use of a vehicle, in violation of ORS 164.135. The pertinent facts are as follows. On September 19, 1979, three black males robbed Stan's Market in northeast Portland. After threatening the store clerk with a knife, they tied him up in a back room and took approximately $110 in cash. At the time the robbery was going on, an automobile belonging to Joe and Joy Eoff was parked outside the market. The robbers took the Eoffs' car and later abandoned it four blocks away. Missing from the car was the Eoffs' luggage, containing clothes and jewelry, a briefcase and Mrs. Eoff's purse.

The police obtained descriptions of the three robbers from the victims. Suspect number one was described a a black male, 24 years old, 5'11", 150 pounds, with short curly hair and a two inch scar on the left side of his neck. Suspect number two was a black male, age 24-26, 6'3" to 6'5", 170 pounds, with short curly hair. Suspect number 3 was a black male, age 22-24, 6', 150-160 pounds, with medium-short curly hair.

On September 24, 1979, a detective from the Multnomah County Sheriff's Office obtained a warrant for the arrest of one Clifford Lucy in connection with the robbery at Stan's Market. On the next day, the detective, accompanied by two Portland police officers, went to Lucy's apartment to execute the arrest warrant.

When the police entered Lucy's apartment they found Lucy and the defendant in the living room. Lucy was the defendant's brother-in-law and the defendant had been living with him temporarily. The officers did not expect to find anyone with Lucy and, although the detectives knew that three black males had been involved in the robbery, they had no reason to suspect the defendant at that point. The defendant did not fit any of the descriptions given by the victims; he was described as 5'11", 140 pounds, and 33 years old. Upon seeing the officers enter, the defendant went down into a prone position on the floor; he was told by one of the officers to stay in that position. The officer then noted a shotgun and a suitcase in the defendant's general vicinity. He seized them both and, opening the top flat of the suitcase, found a jewelry case containing two pearl earrings and a receipt. The case and earrings matched the descriptions of items taken from the Eoffs. The defendant was asked if the suitcase was his and he replied that it was. He was then placed under arrest for theft.

The defendant was subsequently taken to a booking facility where mug shots were taken of him. These were used in photographic throw-downs with the clerk at Stan's Market and the Eoffs; only the clerk picked out the defendant's picture.

The trial court found that the arrest warrant for Lucy and the intrusion into the apartment were illegal. As a result, the arrest of the defendant, the photographic identifications, and the evidence seized from his suitcase were found to be unlawfully obtained. At this point, the state indicated that it would not proceed and the court dismissed the case for want of prosecution. The court's order reads, in part, as follows:

"IT IS ORDERED that defendant's motion to suppress all evidence that resulted from and was obtained incident to defendant's arrest arising from the residential intrusion based on an arrest warrant naming subject Clifford Lucy, including: (1) the red jewelry case and its contents seized from the outside

pocket of defendant's suitcase; and (2) all identification of defendant subsequent to and as a result of his arrest on September 25, 1979, be and the same is hereby allowed."

On appeal, the state concedes that the defendant's arrest was illegal and that the photographic identification of defendant by the victims of the crime is suppressible as "fruits of the poisonous tree."[1] It contends, however, that under a recent Supreme Court opinion, *United States v. Crews,* _____ US _____, 100 S Ct 1244, 63 L E2d 537 (1980), the in-court identification of the defendant is not suppressible as the fruit of an illegal arrest.

As we view the record, the trial judge did not rule upon the admissibility of an independent, in-court identification of the defendant. The defendant's motion to suppress stated,

"Defendant through his attorneys * * * moves to suppress all evidence seized from his suitcase on September 25, 1979; *identification made from photographs taken of him after evidence was illegally seized;* and arrest of him made after evidence was illegally seized." (Emphasis added.)

This motion would appear to speak only to testimony as to identification based upon certain photographs taken of defendant; it does not specifically mention any identification which could be made *independent of* the photographs. This reading of the motion is apparently the one given it by defendant's counsel, who told the trial judge:

"* * * We move to suppress Mr. McMillian's arrest and move to suppress photographs taken of him as a fruit of all of this, and any subsequent identification *made from those photographs."* (Emphasis added.)

Affirmed.

---

[1] *See Wong Sun v. United States,* 371 US 471, 83 S Ct 407, 9 L Ed2d 441 (1963).